CHARLES F. EVANS AND DOROTHY S. EVANS, HIS WIFE,
PLAINTIFFS, v. RALPH VILLANI, ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided August 28, 1951.

*Mr. Ronald A. Gulick,* attorney for plaintiffs.

*Mr. Charles Handler* (*Mr. George B. Astley* of counsel), attorney for defendants.

WILLIAM A. SMITH, J. S. C. This action in lieu of prerogative writ seeks to compel the defendants, the Commissioners of the City of Newark and the city itself to apportion taxes under *R. S.* 54:7–9 between property conveyed by the plaintiffs to the Newark Turnpike Authority under a deed dated February 19, 1951, and the property remaining in the plaintiffs after that conveyance.

Prior to that conveyance the plaintiffs were owners of three contiguous parcels of meadowland in the City of Newark known as Lots 36, 38 and 50 in Block 5020 on the assessment rolls of the City of Newark. Previous to the time of such conveyance the city had purchased lots 36, 38 and 50 in sales for unpaid taxes and held tax certificates thereon. On December 21, 1950, the city filed a complaint in the Chancery Division of this court under the *In Rem* Tax Foreclosure Act, *N. J. S. A.* 54:5–104.29 *et seq.,* to foreclose its tax sale certificate on Lot 50. And on February 28, 1951, the city filed another foreclosure action against Lots 36 and 38.

In the present case on a prayer for preliminary relief the plaintiffs on April 27, 1951, obtained an order to show cause and *ad interim* stay of the Chancery Division proceedings instituted by the city, which was continued by consent until June 26, 1951, when it came on to be heard on the question of whether the stay should be continued pending final hearing. At that time, it appearing that material disputed questions of fact were not involved and that it was necessary to take testimony on matters not covered by the preliminary affidavits and the complaint, the parties stipulated that, instead of the court confining itself to a determination whether the restraint should be continued, the case be heard finally upon the testimony to be taken on that day and on the pleadings and affidavits in the case. The answer had not as yet been

filed by the attorney for the defendants who stated on the record what issues would be raised by the answer, and it was agreed that the defendants should immediately following the hearing file an answer setting up the issues so stated. Testimony was taken and the answer filed as provided for and the matter was therefore submitted to the court for final determination and briefs were exchanged.

The facts in the case are that the plaintiffs negotiated with the New Jersey Turnpike Authority to sell the Authority a part of each of the three tracts referred to which belonged to the two plaintiffs. A survey showing the three tracts is in evidence, Exhibit D-1, and the property has an area of approximately 25 acres. The Authority desired seven acres of land for its right of way cutting through all three tracts which were owned by the plaintiffs. The negotiations between the plaintiffs and the Turnpike Authority resulted in an agreement to convey land on the plaintiffs' part which was dated November 30, 1950, and approved and accepted by the New Jersey Turnpike Authority on December 28, 1950. The agreement was to convey by bargain and sale deed with covenant against the grantor's act for a consideration of $49,200. The plaintiffs agreed that ingress, egress or passageway to or from the lands to be conveyed was not to be given specifically or by implication. Testimony was submitted at the trial fixing the figures as to how the consideration for the sale was arrived at and was to the effect that $16,710 was for the value of the land sold, computed at the rate of $25 per acre, and that $30,769 was to be paid for damages for severance, namely, damages to the remaining lands of the plaintiffs, to which was added the sum of $1,700 for estimated 1951 taxes in full, making a total consideration of $49,179, and for round figures the consideration was entered in the agreement at $49,200.

The Garden State Title Insurance Company represented the Turnpike Authority at the closing on February 26, 1951, and the closing statement as submitted by the Garden State Title Insurance Company was signed and agreed to by the

two plaintiffs and is in evidence, Exhibit P-3. The agreement to convey the land is also in evidence, Exhibit P-2. In the closing statement the sale price is stated as $49,200 and there was allowed for unpaid municipal liens:

```
"Taxes and Int to 2/20/51    .   16,319.34
 Addn int to 3/5/51        .  . .     36.79
 1951 Est tax  . . .          . .  2,174.76*    18,530.89"
```

The gross amount to be received by the seller is then stated in the closing statement as $30,669.11, which was paid to or accounted for to the plaintiffs. Under "Remarks" the closing statement says: "*Estimated 1951 tax on premises in question and more to be held in escrow by Garden State Title Insurance Company and to be paid by it as the various installments become due with balance, if any, after the payments refundable to sellers after payment of all taxes, interest and cost through 1951."

The sum of $18,530.89 was retained by the Title Insurance Company and is still held by them. The bargain and sale deed with covenant against grantor's act which was given by the plaintiffs to the New Jersey Turnpike Authority is in evidence, Exhibit P-1. The deed contains the following covenants:

"It is understood and agreed that the conveyance made hereunder shall be executed, delivered and accepted, however, upon the understanding and agreement that a right or means of ingress, egress or passageway to or from the land hereinbefore described is not hereby given, specifically or by implication.

It is hereby expressly understood and agreed that the party of the first part, and the heirs, devisees, successors and assigns of the party of the first part, from and after the date of this indenture, shall have no right whatever of direct passage or access from lands owned by the party of the first part and abutting upon the lands hereby conveyed, to and from the said lands hereby conveyed and to and from the highway constructed or to be constructed thereon; and the party of the first part for themselves, their heirs, devisees, successors and assigns hereby releases and quitclaims any and all claims to such direct access."

It is important in this case to consider the question of the consideration paid for the damage done by the taking to the

remaining parcels. It appears that the property concerned is meadowland and by reason of the conveyance to the Turnpike Authority of the right of way each tract is divided and therefore separated into parcels which have no right of access to each other and the remaining land is largely reduced in value. Just how access can be obtained to the remaining property does not specifically appear, but it is conceded that it is meadowland and does not have any street frontage and certainly cannot have access to the Turnpike.

To the *in rem* action which the city instituted against the plaintiffs the plaintiffs filed an answer setting up that part of the premises had been conveyed to the Turnpike Authority, that the plaintiffs herein had requested the city to apportion taxes in accordance with *R. S.* 54:7–9, and that sufficient funds had been placed in escrow by the plaintiffs herein to pay all taxes on the portions of the lots which had been conveyed. The answer also requests that the foreclosure action be stayed until the requested apportionment was made. Defendants' answer, filed on July 9, 1951, sets forth five separate defenses, which had been generally stated at the date of the hearing, as follows: The city is entitled under the *In Rem* Tax Foreclosure Act to the property in question subject to redemption on payment of taxes due by the plaintiffs; the Apportionment Act, *R. S.* 54:7–1 *et seq.*, has been superseded by the *In Rem* Tax Foreclosure Act in view of the actions brought by the city under the provisions of the latter act; the rights of the taxpayers of the City of Newark will suffer from the apportionment proposed by plaintiffs and the apportionment will result in the "abandonment of an important part" of the property involved; the proposed apportionment is inequitable because an escrow agreement was entered into by the plaintiffs and the Turnpike Authority conditioned on the payment of taxes due and to become due; to allow the proposed apportionment would deprive the city of the right to collect "its just public revenues." Summed up, the objection of the defendants to granting the relief prayed is that the statutory provision, *R. S.* 54:7–1 *el seq.*, is not

mandatory upon the city and that even if it were, it would not apply in a case of this character where by the severance of a part of the property subject to the municipal liens the balance of the property has been damaged; that the statutory provisions for apportionment of liens is superseded by the provision of the *In Rem* Foreclosure Act referred to, and that the only relief that the plaintiffs have is the right to redeem on payment of the entire taxes due.

Section 1 of the Apportionment Act, *R. S.* 54:7–1, is as follows:

"Any municipal assessment, charge or lien against a parcel of real estate may be apportioned among proper subdivisions of the parcel by the governing body of the municipality in which the parcel is located."

Section 2, *R. S.* 54:7–2, provides that among the liens which may be apportioned are included "the claim of the municipality under a sale for the enforcement of taxes or other municipal liens or charges." Section 3, *R. S.* 54:7–3, provides that the apportionment "shall be made according to the values of the respective subdivisions at the time the respective charges were imposed or levied, unless the claim is justly chargeable only to a particular part of the whole parcel." The last section of the act, section 9, *R. S.* 54:7–9, refers to the apportionment of lands taken for streets, and it will be noted that the tax lien "shall be equitably and justly apportioned between the plot or parcel so taken and the balance that shall remain in the same manner as other apportionments are made." To apportion these tax liens under this statute, having in mind that the charges shall be apportioned under section 3 according to the value of the respective subdivisions at the time the respective charges were imposed or levied, would create a great injustice to the city as it would leave the city with most of its tax to be collected from the depreciated value land remaining in the plaintiffs.

At the trial the city put in evidence the amount of taxes due to it, which are made up as follows:

```
Taxes due city to June 26, 1951
        Lot 50 .  ................ ...   $7,439.04
        Lot 38 .....................    4,696.40
        Lot 36 ....:.................    4,877.05
                                        ─────────
Exclusive of 1951 tax .............. 17,012.49
1951 taxes based on the
    present assessment  .............  2,481.62
                                        ─────────
                                        19,494.11
```

The Garden State Title Company has withheld $18,530.89, which was the sum estimated at the closing as necessary to pay the taxes, and they have a perfect right and I think I may say a duty under the terms of the sale to pay the taxes due to the city, and unquestionably the plaintiffs may insist that they do. These plaintiffs suffered no injustice because in the agreement they made with the Turnpike Authority they agreed to pay all the taxes due on the property both conveyed and retained together with the 1951 taxes as they became due.

It is my conclusion that the plaintiffs are not entitled as a matter of right to apportionment under the statute under the circumstances as they exist in this case and they must be relegated to their remedy of redemption under the *In Rem* Tax Foreclosure Act.